# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-11417
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

October 22, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

RONALD CONNER,

      Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, JONES, and COSTA, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The United States petitioned the district court to enforce a summons of Ronald Conner by the Internal Revenue Service. The district court twice found Conner in contempt of court for failure to fully comply with the summons. He appealed from the district court's denial of his motion to vacate the second contempt order, one granted on motion of the government.

Conner seeks en banc rehearing of our decision to dismiss his appeal as time-barred. He argues that because the United States is a party to the suit, he had 60, not 30, days to file his notice of appeal under Federal Rule of Appellate Procedure 4(a)(1)(B). Treating Conner's petition for en banc

## No. 17-11417

rehearing as a motion for panel reconsideration, we grant the motion for reconsideration and withdraw our prior order dismissing Conner's appeal.

## I

Rule 4(a)(1) provides a 30-day time limit to file a notice of appeal in the Court of Appeals from a district court, but extends that limit to 60 days when the United States is a party. Conner filed his notice of appeal 43 days after the entry of the district court's order denying his motion, and on the government's motion we dismissed his appeal as time-barred. Conner acknowledges that under this Court's decision in *United States v. Brumfield*,[1] the United States is not a party to a civil contempt proceeding for the purposes of the 60-day rule—even if it is a party to the litigation that prompted the contempt order. He urges that *Brumfield* no longer controls the deadline to appeal from civil contempt orders, citing prior and intervening caselaw and statutory changes.

Conner here asks the court to reconsider *Brumfield* given its tensions with decisions of this court, an intervening decision by the Supreme Court, and changes in the applicable federal rules of procedure. We agree and, with fealty to our rule of orderliness, revisit Rule 4(a)(1)(B) in light of its current wording and *Brumfield*'s inconsistency with prior caselaw from this circuit. We conclude that the 60-day limit applies to appeals from civil contempt orders where the United States was a party to the underlying lawsuit.

Noting that the issue was "apparently an issue of first impression in this circuit,"[2] *Brumfield* followed the Sixth Circuit's *United States v. Hallahan* and, in a single paragraph of a lengthy opinion addressing many issues, held that "this is not a situation in which the United States' participation in a contempt

---

[1] 188 F.3d 303, 305–06 (5th Cir. 1999).
[2] *Id.* at 306.

2

holding is in the traditional posture required for that sixty day provision to apply."[3]

When *Brumfield* turned to the Sixth Circuit, it fell in tension with prior panel decisions from this circuit. In *Montelongo v. Meese,* we held that where the United States was a party to the underlying suit but there were also other parties involved, all parties would have sixty days to appeal, even if "the government [was] not a party or . . . not interested in the appeal that [was] actually taken."[4] The panel observed that it saw "no reason to complicate the already difficult task of attempting to determine the timeliness of appeals by requiring that timeliness be determined separately on the basis of which party is concerned with which issue."[5] By *Montelongo*, the determinant is whether the government was a party in the district court proceeding—regardless of whether the actual issue being appealed is one to which the government stands in an appropriate posture.

*Montelongo* distinguished *Virginia Land Co. v. Miami Shipbuilding Corp.*'s application of the 30-day limit to an interlocutory appeal from a case in which the United States, though it had been a party, no longer had ongoing concern with any of the issues in the case.[6] *Virginia Land* noted that "as to the only controversy asserted by the United States, the suit was in effect

---

[3] *Id.* (quoting *United States v. Hallahan*, 768 F.2d 754, 756 (6th Cir. 1985) (internal alterations omitted).

[4] 777 F.2d 1097, 1099 (5th Cir. 1985) (per curiam).

[5] *Id.* at 1098.

[6] 201 F.2d 506, 507–08 (5th Cir. 1953); *see Montelongo*, 777 F.2d at 1098–99 (discussing *Virginia Land*). In *Virginia Land*, the United States had previously reached a settlement with a party that was then dismissed from the case. *See Virginia Land*, 201 F.2d at 508. While it had filed an amended complaint against the appellant, it did so "merely because the court had directed it to file such an amendment," and the panel concluded that this was not enough to show any remaining controversy between the United States and the appellant. *See id.*

determined and brought to an end; and . . . the United States was not, and could not have been, a party at interest in the appeal."[7]

Read together, *Montelongo* and *Virginia Land* index the trigger for the 60-day deadline to United States presence in the underlying case. In *Montelongo*, government presence in the case at trial meant that all parties were entitled to the 60-day limit, even though the ultimate appeal did not concern the United States. In *Virginia Land*, the only controversy involving the United States had been resolved.[8] Neither case suggests that the United States need stand in the "traditional posture" to the appeal. Indeed, *Montelongo*'s language suggests the opposite: that as long as the United States

---

[7] *Virginia Land*, 201 F.2d at 508.

[8] Other circuits to consider the *Virginia Land* decision concluded, as we do here, that it addresses the rare context in which the United States' interest in the underlying case was entirely resolved long before the appeal, even if the United States nominally remained a party. *See S.E.C. v. Pension Fund of Am. L.C.*, 377 F. App'x 957, 960–61 (11th Cir. 2010) (per curiam); *In re Paris Air Crash of Mar. 3, 1974*, 578 F.2d 264, 265 n.1 (9th Cir. 1978) (per curiam); *United States v. Am. Soc'y of Composers, Authors & Publishers* (*ASCAP*), 331 F.2d 117, 119–20 (2d Cir. 1964); *Am. Exp. Lines, Inc. v. Revel*, 262 F.2d 122, 126 (4th Cir. 1958); *cf. Md. Cas. Co. v. Conner*, 382 F.2d 13, 15 (10th Cir. 1967) (concluding that the *Virginia Land* holding applied where "[t]he only connection of the United States with the litigation was the attempt, at the outset of the litigation, to assert a lien upon the property of . . . a corporation of the United States . . . . [that] went out of the case on an order of dismissal and a summary judgment"). The Tenth Circuit recently adopted a similar approach, though it did not cite *Virginia Land. See Jones v. Propstone LLC*, 726 F. App'x 718, 720 (10th Cir. 2018) ("Although it was named in the caption, Jones' complaint contains no factual allegations against the Department of Justice. Moreover, the department was never served, never entered an appearance, and never participated in the proceedings. Under the circumstances, we cannot conclude the Department of Justice is a party to this action." (citing *United States ex rel. Eisenstein*, 556 U.S. 928, 935 (2009), for the proposition that being named in the caption is not equivalent to participating in a case as a party)).

But even if we take *Virginia Land* to impose a broader "real party in interest" requirement on the United States' involvement, in addition to the United States still being a party to the case, this would not imply that the United States must stand in a particular posture to the issue being appealed. Instead, it would only require that the United States still have some real interest in the case at large—consistent with *Montelongo*'s recognition that the 60-day limit could apply to an issue that did not ultimately concern the government, as long as the government was a party to the case. *Cf. Eisenstein*, 556 U.S. at 934 (rejecting the claim that the United States' status as a real party in interest to a qui tam proceeding was sufficient to transform the United States into an "actual 'party'" for the 60-day limit to apply).

No. 17-11417

is a party to the case, it does not matter "which party is concerned with which issue" in the appeal. The *Brumfield* opinion, relying on the Sixth Circuit opinion in *Hallahan*, made no mention of these cases.

## II

Conner further points to an intervening Supreme Court decision and changes wrought in statute and rule. The tension between *Brumfield* and earlier cases of this court aside, statutory developments require our turn to the United States' presence in the case—sans its "posture" relative to the appeal.

## A

As an initial matter, Conner argues that *United States ex rel. Eisenstein v. City of New York* overruled *Brumfield*.[9] *Eisenstein* was a qui tam suit under the False Claims Act.[10] While the FCA allows the United States to intervene in such suits, it declined to do so in Eisenstein's suit.[11] The district court dismissed Eisenstein's complaint. He filed a notice of appeal within the 60-day limit but outside the 30-day limit.[12] The Supreme Court concluded that based on Black's Law Dictionary definitions of "party" and "intervention" and prior caselaw on the nature of intervention, the United States was not a "party" for the purposes of the 60-day deadline when it had declined to intervene, had not brought the litigation, and was not being sued as a defendant—despite its significant economic interest in the case.[13]

Conner argues that this holding steps on *Brumfield*'s treatment of the United States' "posture" in the appeal as a trigger for the 60-day time limit—

---

[9] *See* 556 U.S. 928 (2009).

[10] *Id.* at 929.

[11] *Id.* at 930, 932.

[12] *Id.* at 930.

[13] *Id.* at 932–33. The cited definition of "party" was "[o]ne by or against whom a lawsuit is brought," and the cited definition of "intervention" was "[t]he legal procedure by which . . . a third party is allowed to become a party to the litigation." *See id.* at 933 (citing Black's Law Dictionary 840, 1154 (8th ed. 2004)).

No. 17-11417

hence *Brumfield*'s grant of only 30 days to notice appeal in a contempt proceeding.[14] *Eisenstein* held at a minimum that the government's presence as a party was required; that its "interest" alone was not enough, even though by definition it had a plain economic interest in the qui tam suit at issue.[15] Conner urges us to read this to further hold that the 60-day deadline is exclusively indexed to whether the United States was a party to the underlying litigation.

We do not read *Eisenstein* as overruling *Brumfield*. *Brumfield* held that even though the United States was a party, it did not trigger the 60-day period as the government was not in the "traditional posture" relative to the appeal. *Eisenstein* only held that a government interest in a case to which it was not a party does not trigger the 60-day period. The decision resolved a circuit split as to whether the 60-day limit applied where the United States had a distinct interest, but was not a party.[16] It did not answer whether the United States' party status is always sufficient to trigger the 60-day deadline.

**B**

Even though *Eisenstein* did not resolve the issue, we conclude that by a fair reading of the 2011 amendments to Federal Rule of Appellate Procedure 4 and 28 U.S.C. section 2107, *Brumfield*'s holding cannot stand.

In 1999, the year *Brumfield* was decided, the relevant portion of Rule 4(a)(1) read as follows:

> (A) In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after the judgment or order appealed from is entered.

---

[14] *Brumfield*, 188 F.3d at 306.

[15] *Eisenstein*, 556 U.S. at 933–36.

[16] 16A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3950.2 & n.60 (4th ed.).

No. 17-11417

(B)  When the United States or its officer or agency is a party, the notice of appeal may be filed by any party within 60 days after the judgment or order appealed from is entered.[17]

The 2011 Rules Advisory Committee Notes focused upon "the greater need for clarity of application when appeal rights are at stake," and proposed amending Rule 4(a)(1)(B) to include "safe harbor provisions that parties can readily apply and rely upon."[18] To do so the Committee undertook to clarify the reach of the Rule in application to suits against United States officers. After those amendments, Rule 4(a)(1)(B) reads:

(B) The notice of appeal may be filed by any party within 60 days after entry of the judgment or order appealed from if one of the parties is:

(i)    the United States;

(ii)   a United States agency;

(iii)  a United States officer or employee sued in an official capacity; or

(iv)   a current or former United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf—including all instances in which the United States represents that person when the judgment or order is entered

---

[17] Fed. R. App. P. 4(a)(1) (1999).

[18] Fed. R. App. P. 4(a)(1)(B) advisory committee's note to 2011 amendments [hereinafter Advisory Committee Note].

7

No. 17-11417

or files the appeal for that
person.[19]

The Rules change came hand in hand with a congressional amendment to 28 U.S.C. section 2107 substantially tracking Rule 4(a)(1)(B)'s language.[20]

In keeping with their goal of clarity for all parties, the 2011 amendments establish when the 60-day rule applies to appeals from suits against United States officers or employees sued in their individual capacities—cases where the government may or may not have an interest in the appeal. The Rules Committee could have qualified the party-status rule to apply only to suits against United States officers or employees in their individual capacities where the government has an interest writ large, which would have been consistent with the principles underlying *Brumfield* and *Hallahan*. Instead, recognizing the need for precision, the Rules Committee hewed to party status as the determinant of the 60-day deadline. It used presence as a party, sans any element of case issues on appeal, to create a sharply defined category: the 60-day rule applies where the United States represents an officer or employee, in addition to cases where the officer or employee was otherwise sued for acts or omissions performed on the United States' behalf. And, tellingly, the amendments preserved the right of *any* party to file a notice of appeal within the expanded 60-day deadline. In the context of these amendments, which were designed to eliminate traps for the unwary, we read Rule 4(a)(1)(B) to mean

---

[19] Fed. R. App. P. 4(a)(1)(B).

[20] 28 U.S.C. § 2107(b) (2011) ("[T]he time as to all parties shall be 60 days from such entry if one of the parties is— (1) the United States; (2) a United States agency; (3) a United States officer or employee sued in an official capacity; or (4) a current or former United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on behalf of the United States, including all instances in which the United States represents that officer or employee when the judgment, order, or decree is entered or files the appeal for that officer or employee.").

No. 17-11417

what it says[21]: that the 60-day deadline applies if the United States was a party to the lawsuit being appealed, without any additional mandate that it be in a certain posture or possess a certain interest. *Brumfield*'s insertion of a "posture" requirement is in the teeth of the language of the rule.

\* \* \*

As we have explained, this court reached effectively the same conclusion in *Montelongo* based on a prior version of the rule, and *Brumfield* was in tension with that holding. The plain text of Rule 4 after its "safe harbor" provisions were introduced in 2011 only sharpens our conviction that the rule does not smuggle in a "posture" or "interest" requirement—when the government is a party, the 60-day deadline applies, full stop.

The argument that these authorities do not conflict with *Brumfield* loses force in the face of the imperative of clarity—of the command of Rule 1 of the Federal Rules that they be read to guide away from the high risk of unfairness.[22] Faithful to our rule of orderliness, we abandon *Brumfield* and conclude that Conner's notice of appeal within the 60-day limit in Rule 4(a)(1)(B) was timely.

### III

This conclusion places this court on the same footing as our fellow circuits, which largely treat the party status of the United States as determinative of whether appeals from a case are controlled by the 60-day deadline.[23] Other courts have applied the longer timeframe in a number of cases where the United States, while a party to the district court proceeding,

---

[21] *See Simmons v. Himmelreich*, 136 S. Ct. 1843, 1848 (2016).

[22] Fed. R. Civ. P. 1.

[23] The Sixth Circuit does not appear to have abandoned *Hallahan*, but neither have any subsequent Sixth Circuit cases cited *Hallahan* for its conclusion that the 60-day limit does not apply to appeals from civil contempt orders where the United States was a party to the underlying lawsuit.

was not in the "traditional posture" relative to another party's appeal. These include appeals between private parties regarding consent decrees that the United States was involved in establishing and monitoring.[24] They also include appeals from portions of bifurcated or otherwise divided trial proceedings where the United States' role was confined to a different portion of the proceeding not at issue in the appeal.[25] Treating the United States' involvement as a party in the underlying proceeding as dispositive, these courts rejected invitations to focus on the government's interest in the specific claims made on appeal.[26]

It is similarly consistent with treatment of the 60-day limit in the context of consolidated or multidistrict litigation. We looked to the longer deadline

---

[24] *See In re Burlington N., Inc. Emp't Practices Litig.*, 810 F.2d 601, 606 (7th Cir. 1986) (applying the 60-day deadline to the appeal of an attorney's fees determination that would not affect the United States directly, but where the Equal Employment Opportunity Commission had been involved as a party in the underlying case and remained a party to proceedings monitoring a consent decree); *ASCAP*, 331 F.2d at 119–20 (doing the same in an action brought under a consent decree to which the United States was a party, but the only issue being appealed did not concern the United States' prior antitrust claims that prompted the consent decree).

[25] *See In re Paris Air Crash*, 578 F.2d at 265 (applying the 60-day deadline where the appeal was from the portion of a bifurcated trial that did not directly concern the United States); *Corning Glass Works v. P.R. Water Res. Auth., Inc.*, 396 F.2d 421, 423 n.1 (1st Cir. 1968) (doing the same where the United States was a cross-defendant with a potential obligation of contribution); *Revel*, 262 F.2d at 126 (doing the same for an appeal between two non-government parties, where the United States was an impleaded third-party defendant and could be liable to one of the parties involved in the appeal).

[26] *See, e.g.*, *In re Paris Air Crash*, 578 F.2d at 265 ("We agree . . . that a literal reading of the 60-day exception is the preferred view in order to eliminate the element of uncertainty . . . in a critical procedural rule."); *ASCAP*, 331 F.2d at 119 ("It is in the last degree undesirable to read into a procedural statute or rule, fixing the time within which action may be taken, a hidden exception or qualification that will result in the rights of clients being sacrificed when capable counsel have reasonably relied on the language . . . . The stated criterion is whether the United States is a party to the action, a test clearly satisfied here, and not whether the United States is concerned with the particular order sought to be appealed—something that often cannot be accurately determined when the order is made."); *see also* Wright & Miller, *supra*, § 3950.2 (approving of a focus on party status rather than the United States' interest in the issue being appealed); *cf. Revel*, 262 F.2d at 126–27 (explaining the absurdity that might result from the opposite approach and concluding that "[n]othing in the governing provisions of the statute and rule requires this solecism").

No. 17-11417

where the Equal Employment Opportunity Commission and several private parties sued the same defendants, the district court consolidated the lawsuits, and some of the private plaintiffs appealed from a consent decree between all parties.[27] Indeed, circuits have squarely concluded that the 60-day deadline operates any time the government was a party to one of the consolidated lawsuits, even where the appeal solely concerns a different lawsuit and the government is not a party to the appeal.[28]

\* \* \*

*Brumfield* was inconsistent with our prior caselaw on the 60-day limit, and its tension with governing law grew in the face of the 2011 Rules and statutory revisions. Today we bring our treatment of the 60-day deadline in civil contempt proceedings in line with these authorities.

## IV

We grant Conner's motion for reconsideration and withdraw our dismissal of Conner's appeal.

---

[27] *See In re MDL 262*, 799 F.2d 1076, 1077–78 (5th Cir. 1986) (per curiam). There, the Commission had filed a motion to dismiss the private plaintiffs' appeal from the consent decree, but the panel did not indicate that the Commission's actual involvement in the appeal was what triggered the 60-day deadline. *See id.* at 1079.

[28] *See In re Adams Apple, Inc.*, 829 F.2d 1484, 1487 (9th Cir. 1987) (holding that the 60-day limit applied where three cases were treated as consolidated by the district court and resolved together, and the Small Business Administration was a party to one of the cases); *Cablevision Sys. Dev. Co. v. Motion Picture Ass'n of Am., Inc.*, 808 F.2d 133, 134 (D. C. Cir. 1987) (per curiam) (holding the same where one of the consolidated cases had been required to join the Copyright Office and Register of Copyrights as necessary parties, but the others had not, and the appellant appealed from all three after the 30-day deadline had passed); *Donovan v. Tierra Vista, Inc.*, 796 F.2d 1259, 1260 (10th Cir. 1986) (holding the same where a private party and the Secretary of Labor brought separate suits against the same employer, those suits were consolidated for trial, and the private party appealed); *cf. In re Burlington N.*, 810 F.2d at 606 (7th Cir. 1986) (applying the 60-day deadline where the Equal Employment Opportunity Commission had intervened in a consolidated set of lawsuits against an employer, but the appeal was solely based on lead counsel contesting their attorney's fees).